STATE v. J. L. HAWLEY.

(Filed 14 November, 1923.)

**1. Criminal Law—Indictment—Statutes.**

The technical and useless refinements of the common law, formerly required in drawing bills of indictment in criminal cases, have been all abolished by statute.  C. S., secs. 4610, 4625.

**2. Same—Perjury.**

A bill of indictment is sufficient to constitute the charge of perjury if it is in the words prescribed by C. S., 4615.  Though on the trial the State must show beyond a reasonable doubt that the evidence as charged was false, that it was corruptly and wilfully done, and upon a point material to the issue in the case set out in the bill of indictment; an indictment drawn in the form prescribed by the statute is sufficient.  *S. v. Cline,* 150 N. C., 854, overruled.

**3. Same—Surplusage.**

The words, "suit, controversy, or investigation" (C. S., sec. 4615), may be regarded as surplusage in a bill of indictment charging perjury, and a motion to quash upon the ground that there was indefiniteness of statement of the nature of the proceeding will not be sustained.

**4. Same—Bill of Particulars.**

Where the defendant in an action for perjury is in ignorance of the particulars of the offense charged, his remedy is by application to the court for a bill of particulars (C. S., sec. 4613) if the indictment is in the form prescribed by C. S., sec. 4615.

STACY, J., dissenting.

APPEAL by State from *Stack, J.,* at October Term, 1923, of RICH-MOND.

The indictment was in the following words:

The jurors for the State, upon their oaths, present: That J. L. Hawley, late of the county of Richmond, on the...... day of October, A. D. 1922, with force and arms, at and in the county aforesaid, did unlawfully, wilfully, feloniously, and corruptly commit perjury upon the trial of an action, suit, controversy or investigation pending in the Superior Court of Richmond County, wherein the State of North Carolina was plaintiff and Younger Smith was defendant in a certain affidavit sworn to by the said J. L. Hawley before J. A. McAuly, having competent authority to administer said oath, by falsely asserting on oath (or solemn affirmation), that he, the said J. L. Hawley has not been and is not now a Knight of the Invisible Empire or Knights of the Ku Klux Klan, sometimes known as the Kluckers, knowing the said statement, or

statements, to be false, or being ignorant whether or not said statement was true, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

PHILLIPS, *Solicitor.*

And this bill found a true bill.

D. A. PARSONS,
*Foreman of the Grand Jury.*

The defendant demurred to the indictment and filed the following demurrer and motion to quash:

Now comes the defendant, J. L. Hawley, and demurs to the indictment in the above-entitled criminal action, for that:

1. The said indictment is fatally vague and indefinite, in that it alleges that perjury was committed "upon the trial of an action, suit, controversy, or investigation," without definite statements of the nature of the proceeding in which the alleged perjury was committed.

2. That said indictment does not aver that the alleged false oath was material to any issue or matter under trial or investigation, and does not set forth facts from which the materiality in anywise appears.

3. The said indictment does not charge the commission of a crime of which the court can take cognizance.

Wherefore, defendant moves that the said indictment be quashed and that he be discharged.

H. S. BOGGAN, PARKER, STEWART, McRAE, & BOBBITT,
*Attorneys for Defendant.*

The motion was allowed, and the bill was quashed. The Solicitor for the State appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*H. S. Boggan and Parker, Stewart, McRae & Bobbitt for defendant.*

CLARK, C. J. The chief ground upon which the bill was quashed was that it did not in specific terms allege that the facts set out in the bill, about which the false swearing was alleged to have occurred, were "material to the issue" then pending before the court.

Previous to the act of 1889 (ch. 83, now C. S., 4615), the omission of such allegation or of allegations which would show upon their face that the false oath was material, would have been fatal. Since, however, the enactment of that law, the Court has repeatedly, and with one single exception, sustained the bill of indictment, which is in the exact words of the statute.

In *S. v. Peters,* 107 N. C., 876, at p. 884, the Court said: "The authority of the Legislature to prescribe forms of indictment is sus-

tained in *S. v. Moore,* 104 N. C., 743. The form of indictment here authorized points out to the defendant that the offense charged is perjury, the court and the names of the parties to the proceeding in which it is alleged to have been committed, the words alleged to have been sworn, and their falsity. The charge is simplified. But the constituent elements of the offense remain as before. They are included in the allegation, 'did commit perjury,' and it must still be shown in proof that the defendant made oath or affirmation substantially as charged, that the defendant was duly sworn by an officer competent to administer the oath, and in a matter of which he had jurisdiction, and in one of the cases specified in The Code, sec. 1092—*i. e.,* 'in a suit, controversy, matter or cause depending in any of the courts of the State, or in a deposition or affidavit taken pursuant to law, or in an oath or affirmation duly administered of, or concerning, any matter or thing whereof such person is lawfully required to be sworn or affirmed,' that it was in a material matter, and the jury must be further satisfied that such oath or affirmation was wilfully and corruptly false."

The indictment followed the statute and was sustained, without alleging materiality of the oath, in the following cases also, besides *S. v. Peters, supra; S. v. Thompson,* 113 N. C., 638; *S. v. Harris,* 145 N. C., 456; *S. v. Cline,* 146 N. C., 640; *S. v. Hyman,* 164 N. C., 413. In each one of these cases the argument upon which *S. v. Cline,* 150 N. C., 854, was based would have been equally applicable, yet in all of them the Court sustained the bill of indictment, though attacked either by a motion to quash or by motion in arrest of judgment, and none of these cases were cited in *Cline's case* in the 150th.

In the case at bar the defendant was definitely informed of the nature of the crime and would have an opportunity to confront the witnesses, and the State must show that the facts set out in the oath were false and that the false swearing was corrupt and wilful, and that it was upon a point material to the issue in the case set out in the bill of indictment. How, then, could the defendant, Hawley, be deprived of any of his constitutional rights? The courts now disregard these refinements, so as not to permit the defendant to avoid answering a bill of indictment because there are merely technical and formal errors in the bill of indictment. "The refined technicalities of the procedure at common law in both civil and criminal cases have almost entirely, if not quite, been abolished by our statute, C. S., 4610 to 4625." *S. v. Hedgecock,* 185 N. C., 714.

The defendant further attacks the bill of indictment because it alleges that perjury was committed upon the trial of an action, suit, controversy or investigation without definite statements of the nature of the proceeding in which the alleged perjury was committed. The words, "suit,

controversy or investigation," may be eliminated from the bill of indictment as surplusage. *S. v. Piner*, 141 N. C., 760.

In a ruder age, technicalities and what are called "refinements" were considered of more importance than the trial of a case on the merits, whose determination is the object in all modern systems. In indictments for murder it was essential to enumerate many particulars, taking two pages or more of foolscap to allege many circumstances of no value, such as the nature and depth of the wound, the value of the weapon with which it was committed, that the criminal was "moved and instigated by the devil," and the like. Indeed, in a case in this State, on the conviction of a flagrant homicide, where there was no doubt whatever of the guilt of the murderer, judgment on the verdict of guilty was arrested because on a microscopic scrutiny of the indictment it was found that the word "knife," with which the offense was alleged to have been committed by the murderer, left out the letter "k," and many other cases of like nature occurred.

The act of 1811, now C. S., 4623, provides that no bill or warrant shall be quashed for informality. "Every criminal proceeding, by warrant, indictment, information, or impeachment, is sufficient in form for all intents and purposes if it is expressly charged against the defendant in a plain, intelligible and implicit manner, and the same shall not be quashed or judgment thereon stayed by reason of any informality or refinement, if in the bill or proceedings sufficient matter appears to enable the court to proceed to judgment"; and the act of 1889, ch. 83, now C. S., 5615, prescribes a form of bill for perjury which contains the identical words of the bill which was used by the solicitor in this case. Such authority cannot be repealed by an inadvertent decision as has been made in the single case upon which the defendant relies.

In *S. v. Owen*, 5 N. C., 452, judgment was arrested because the judgment had not charged the depth and width of the wound.

*Chief Justice Ruffin*, in *S. v. Moses*, 13 N. C., 464, says: "The act of 1811, passed the year after *Owen's case* (5 N. C., 452), was decided and, we have reason to believe, was caused by it. It enacted that in all criminal prosecutions in the Superior Courts it shall be sufficient that the indictment contain the charge in a plain, intelligible and explicit manner; and no judgment shall be arrested for or by reason of any informality or refinement when there appears to be sufficient in the face of the indictment to induce the court to proceed to judgment," and the great *Chief Justice* added the following memorable words: "This law was certainly designed to uphold the execution of public justice by freeing the courts from those fetters of form, technicality and refinement which do not concern the substance of the charge and the proof to support it. Many of the sages of the law had before called nice objec-

tions of this sort a disease of the law and a reproach to the bench, and lamented that they were bound down to strict and precise precedents, neither more brief, plain nor perspicuous than that which they were constrained to reject. In all indictments, especially those for felonies, exceptions extremely refined, and often going to form only, have been, though reluctantly, entertained. We think the Legislature meant to disallow the whole of them, and only require the substance—that is, a direct averment of those facts and circumstances which constitute the crime, to be set forth. It is to be remarked that the act directs the court to proceed to judgment without regard to two things—the one form, the other precedent." These words have been quoted and approved more than forty times.

This practical comprehension of the demands of the times that a plain statement of the procedure is to be adopted in the administration of justice, rejecting all merely technical objections as to form, has been repeatedly and often affirmed.

A brief form of indictment for murder was enacted in 1887, now C. S., 4614, substituting three lines for the previous cumbersome and absurd form in use, and has been often approved. See citations under that section in the Consolidated Statutes.

In like manner, the specific short form for perjury used in the present instance was enacted in 1889, chapter 83 (a third of a century ago), now C. S., 4615, and has been in constant use ever since and often approved. And the same is true as to many other offenses, and they are all also authorized by the general law in the above-quoted sections— C. S., 4612, 4623, and 4625. Indeed, in *S. v. Kirkman,* 104 N. C., 911, the Court rejected once for all the recital in the Constitution itself, that indictments should conclude "against the peace and dignity of the State."

As a safety valve to prevent any possibility of harm to any defendant by the Doric plainness required in indictments, it is provided that whenever there should be alleged by any defendant ignorance of the particulars of the offense with which he was charged, he can apply to the court to order a bill of particulars. See C. S., 4613, and the numerous cases thereunder in which that practice has been approved.

As to this particular offense of perjury, there is a *verbatim* form of indictment prescribed in C. S., 4615, which the statute specifically says "shall be sufficient" and which has been in constant use ever since. The indictment, in the present case, follows that form *verbatim.* The Court, therefore, is unable, and does not wish indeed, to repeal the statute, and we must hold the case of *S. v. Cline,* 150 N. C., 854, which inadvertently overruled (without mentioning that it did so) the form prescribed by the statute, and the numerous cases which had expressly

approved it, must have been inadvertently adopted in the press of business, and we cannot regard it as authority and overrule it.  The statute itself prescribed the form used in this case, and we have many cases in which that form has been expressly approved.  There are hundreds of cases which must have followed the form prescribed by the statute.

It is worthy of note that *S. v. Cline,* 146 N. C., 640, was before the Court on an appeal from a judgment quashing the bill, and *Walker, J.,* in a very full opinion, citing the authorities, upheld the indictment which was in the words prescribed by the statute, and reversed the judgment below, sending it back for trial.  The identical case of *S. v. Cline* came back, 150 N. C., 854, upon a verdict of guilty, and it is conclusive that the opinion of reversal in that case was an inadvertence, for it contains no reference to the previous opinion in the same case by *Walker, J.,* 146 N. C., 640, nor to the fact that the indictment was in the identical form of the statute.  The later case (150 N. C., 854) has never been cited or quoted since, while, as above said, *S. v. Cline,* 146 N. C., 640, cited many cases upholding the form prescribed by the statute, and has itself been cited since in *S. v. Hyman,* 164 N. C., 414, and the statutory form of indictment for perjury has been universally followed throughout the State.

Reversed.

STACY, J., dissenting: The trial judge placed his judgment squarely upon the decision of this Court in *S. v. Cline,* 150 N. C., 854, which contains our latest expression on the subject.  In this, I think he was right.  That case was well considered.  It is in line with the overwhelming weight of authority, and we should be slow to overrule it.

In an indictment for perjury, the materiality of the alleged false oath, to my mind, is not merely a matter of form, but rather an essential element of the offense.  It certainly would be necessary for the State to prove it on the hearing in order to make out the charge.  Then what becomes of the settled maxim of the law that "proof without allegation is as unavailing as allegation without proof?"  *Dixon v. Davis,* 184 N. C., p. 209; *Green v. Biggs,* 167 N. C., p. 422; *McCoy v. R. R.,* 142 N. C., p. 387.  Why subject the defendant to the inconvenience of a trial if the State cannot prove the materiality of the alleged false oath and will not allege it?  Every essential element of a crime must be charged in the bill of indictment, and any defect in this respect is not subject to be cured by a bill of particulars.  C. S., 4613; *S. v. Van Pelt,* 136 N. C., 633.  This is not a technicality; it is a matter of substance.  I think the present bill is defective.  The judgment below should be affirmed and the solicitor allowed to send another bill, if so advised.